B 6D (Official Form 6D) (12/07)

U.S. COURTS

In re _Edgar M. Tharp III_ _____, Case No. _17 - 01668 - JDP_
               Debtor                                                (If known)

APR 26 2018

Rcvd_____ Filed _KM_ Time_ 4:07 p.m.

STEPHEN W. KENYON

## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

CLERK. State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ADA County Treasurer ACCOUNT NO. Parcel # - R3856000011 P.O. Box 2869 | | | June 2014 Tax lien Personal Real Property 300,000 VALUE $ | | | | $5816.90 | |
| ADA County Treasurer ACCOUNT NO. Parcel # - R2733032005 P.O. Box 2868 | | | June 2014 Tax lien Real Property $300,000 - 250,000 VALUE $ | | | | $6717.07 | |
| Caliber Home Loan ACCOUNT NO. 9601343642 92 corporate park Suite 32 Irvine, Calif. | | | mortgage Jan 2010 Primary residence 420,000 VALUE $ | | | | $270,000 | $ |
| continuation sheets _2606_ attached | | | Subtotal ▶ (Total of this page) | | | | $232,533 | $ |
| | | | Total ▶ (Use only on last page) | | | | $ | $ |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

B 6D (Official Form 6D) (12/07) – Cont.

In re _____   Case No. _17 - 0168 - JDP_
           Debtor                              (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAN D, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Canyon County Treasurer ACCOUNT NO. PIN 31554 03 0 P.O. Box 1010 Caldwell, Idaho | | | June 2014 TAX lien Commercial Retail Prop 450,000 VALUE $ | | | | 21,537.32 | |
| Key Bank ACCOUNT NO. 123602125 442 8157 W. Farview Dr Boise, ID. 83704 | | | Jan 2010 HELOC 70,000 VALUE $ | | | | $65,000 | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |

Sheet no. ___ of ___ continuation
sheets attached to Schedule of
Creditors Holding Secured Claims

Subtotal (s) ▶
(Total(s) of this page)

Total(s) ▶
(Use only on last page)

$ 86,537.32

$ 319,075

(Report also on
Summary of Schedules.)

(If applicable,
report also on
Statistical Summary
of Certain
Liabilities and
Related Data.)

Fill in this information to identify your case:

Debtor 1 _____
          First Name          Middle Name          Last Name

Debtor 2 _____
(Spouse, if filing) First Name   Middle Name          Last Name

United States Bankruptcy Court for the: _____ District of _____

Case number _____
(if known)

☐ Check if this is an amended filing

Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Have Claims Secured by Property.* If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

## Part 1:    List All of Your PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims against you?
   ☐ No. Go to Part 2.
   ☑ Yes.

2. List all of your priority unsecured claims. If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|

**2.1** THERESA Cline (Rept. of Lulune)

Priority Creditor's Name

216 N LOUISA

Number    Street

BOISE

City    State    ZIP Code    837/2

Last 4 digits of account number 7 9 4 4

450 W. State St     When was the debt incurred? 06/2014

Buse, ID. 83702

$8950    $8950    $370

Who incurred the debt? Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?
☐ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Type of PRIORITY unsecured claim:
☑ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**2.2** OSHU Humphry

Priority Creditor's Name

P.O. Box 9418

Number    Street

Boise, ID. 83712

City    State    ZIP Code

Last 4 digits of account number 1 6 2 4

When was the debt incurred? 7/11

$4900    $4900    $

Who incurred the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

Is the claim subject to offset?
☑ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Type of PRIORITY unsecured claim:
☐ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____ IQA _____

| Debtor 1 | | | | Case number (if known) |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

## Part 1: Your PRIORITY Unsecured Claims — Continuation Page

After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

| | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|

**[3]**

Priority Creditor's Name: Boise City Utility Billing
Last 4 digits of account number **2 1 6 1**

Total claim: $1132.51   Priority amount: $1020.00   Nonpriority amount: $111.94

Number / Street: 150 N Capitol Blvd
When was the debt incurred? 4/1/17

City / State / ZIP Code: Boise ID 83702

As of the date you file, the claim is: Check all that apply.

- ☑ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Type of PRIORITY unsecured claim:**
- ☐ Domestic support obligations
- ☐ Taxes and certain other debts you owe the government
- ☐ Claims for death or personal injury while you were intoxicated
- ☑ Other. Specify _utility_

**Is the claim subject to offset?**
- ☐ No
- ☑ Yes

**[4]**

Priority Creditor's Name: Boise City Utility Billing
Last 4 digits of account number **5 8 5 3**

Total claim: $2053.00   Priority amount: $1953.35   Nonpriority amount: $100.38

Number / Street: 150 N. Capitol Blvd
When was the debt incurred? 12/20/17

City / State / ZIP Code: Boise, ID. 83702

As of the date you file, the claim is: Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Type of PRIORITY unsecured claim:**
- ☐ Domestic support obligations
- ☐ Taxes and certain other debts you owe the government
- ☐ Claims for death or personal injury while you were intoxicated
- ☑ Other. Specify _Utility_

**Is the claim subject to offset?**
- ☐ No
- ☑ Yes

**[5]**

Priority Creditor's Name: Mauly's Johnson(Att)
Last 4 digits of account number **5 1 0 5**

Total claim: $5105   Priority amount: $5105   Nonpriority amount: $0

Number / Street: 1412 N. Idahust
When was the debt incurred? 1/2012

City / State / ZIP Code: Boise, ID 83702

As of the date you file, the claim is: Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who incurred the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

**Type of PRIORITY unsecured claim:**
- ☐ Domestic support obligations
- ☐ Taxes and certain other debts you owe the government
- ☐ Claims for death or personal injury while you were intoxicated
- ☐ Other. Specify _____

**Is the claim subject to offset?**
- ☐ No
- ☑ Yes

PART 1 CONT - E + F

⑥ LOAN ME                    debt incurred - 7/1/15
P.O. Box 5645
Orange, CA.               9 6 0 2        $ 4235⁰⁰
  92863
Debtor 1 only  ✓           TYPE - PAYDAY LOAN
offset → yes

⑦ Key Bank Loan Services    Debtor 1 only    5 4 1 0
127 Public Square           offset → yes  7/2014  $662⁹⁵
Cleveland, OH 44114

⑧ Key Bank loan Surcs      Debtor 1 only    1 2 4 6    $4999⁸³
(SAME AS Above)            offset → yes   Feb 14, 2014

⑨ Key Bank loan Servics                         E.T.
⑨ Secured                   Debtor 1 only   5 4 4 2
(SAME AS Above)             offset → yes  May 20 11
                                            $61,793

⑩ Crown Asset Management LLC
Debtor 1 only 3600 Breckenridge Blvd ste 725    4 2 8 5
offset yes  Deluth Georsia  30096  866 69%  442  9/15/15  5313⁶²

Debtor 1 _____   Case number (if known) _____
           First Name   Middle Name   Last Name

## Part 2:   List All of Your NONPRIORITY Unsecured Claims

3. **Do any creditors have nonpriority unsecured claims against you?**
   ☐ No. You have nothing to report in this part. Submit this form to the court with your schedules.
   ☐ Yes

4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one
   nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already
   included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured
   claims fill out the Continuation Page of Part 2.

| | |
|---|---|
| **4.1** AD Astra Recovery Serves | Last 4 digits of account number  6 2 1 5     Total claim $ 1197 ºº |
| Nonpriority Creditor's Name | |
| 7330 W 3rd St. | When was the debt incurred?  2/2016 |
| Number      Street | |
| N Ste 118 Wichita KS. | |
| City                        State        ZIP Code | **As of the date you file, the claim is:** Check all that apply. |
| | ☐ Contingent |
| **Who incurred the debt?** Check one. | ☐ Unliquidated |
| ☑ Debtor 1 only | ☐ Disputed |
| ☐ Debtor 2 only | |
| ☐ Debtor 1 and Debtor 2 only | **Type of NONPRIORITY unsecured claim:** |
| ☐ At least one of the debtors and another | ☐ Student loans |
| ☐ Check if this claim is for a community debt | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| **Is the claim subject to offset?** | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☑ No | ☑ Other. Specify ___ Credit Card ___ |
| ☐ Yes | |

| | |
|---|---|
| **4.2** Collection Bureau Inc | Last 4 digits of account number  6 5 7 2    $ 214 |
| Nonpriority Creditor's Name | When was the debt incurred?  5/2/12 |
| P.O. Box 1219 | |
| Number      Street | |
| Nampa ID  83653 | As of the date you file, the claim is: Check all that apply. |
| City                        State        ZIP Code | |
| | ☐ Contingent |
| **Who incurred the debt?** Check one. | ☐ Unliquidated |
| ☑ Debtor 1 only | ☐ Disputed |
| ☐ Debtor 2 only | |
| ☐ Debtor 1 and Debtor 2 only | **Type of NONPRIORITY unsecured claim:** |
| ☐ At least one of the debtors and another | ☐ Student loans |
| ☐ Check if this claim is for a community debt | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| **Is the claim subject to offset?** | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☑ No | ☑ Other. Specify ___ Credit ___ |
| ☐ Yes | |

| | |
|---|---|
| **4.3** Johnson Mark (MT45) | Last 4 digits of account number  0 6 3 4    $ 7594 |
| Nonpriority Creditor's Name | When was the debt incurred?  2/17 |
| P.O. Box 7811 | |
| Number      Street | X (2) Accounts  1006    $ 3156 ²⁷ |
| Sandy UTAH | As of the date you file, the claim is: Check all that apply. |
| City                        State        ZIP Code | |
| | ☐ Contingent |
| **Who incurred the debt?** Check one. | ☐ Unliquidated |
| ☐ Debtor 1 only | ☐ Disputed |
| ☐ Debtor 2 only | |
| ☐ Debtor 1 and Debtor 2 only | **Type of NONPRIORITY unsecured claim:** |
| ☐ At least one of the debtors and another | ☐ Student loans |
| ☐ Check if this claim is for a community debt | ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims |
| **Is the claim subject to offset?** | ☐ Debts to pension or profit-sharing plans, and other similar debts |
| ☑ No | ☑ Other. Specify ___ Credit Card ___ |
| ☐ Yes | |

Debtor 1 _____   Case number *(if known)*_____
          First Name      Middle Name      Last Name

**Part 2:**   **Your NONPRIORITY Unsecured Claims — Continuation Page**

After listing any entries on this page, number them beginning with 4.4, followed by 4.5, and so forth.     Total claim

| 4.5 | Nortland group | | |
|---|---|---|---|

Nonpriority Creditor's Name

P.O. BOX _____

Number     Street

Minneapolis                      390096

City                          State    ZIP Code
                    55439

Who incurred the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☑ No
☐ Yes

Last 4 digits of account number  9 9 1 7

When was the debt incurred?   2015

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that
   you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify____credit card____

$ 4,11⁵⁴

---

| 4.6 | Portfolio Recovery group | | |
|---|---|---|---|

Nonpriority Creditor's Name

120 corporate Blvd

Number     Street

Norfolk VA. 23502

City                          State    ZIP Code

Who incurred the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☑ No
☐ Yes

Last 4 digits of account number  8 7 5 4

When was the debt incurred?   2017

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that
   you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify_____

$ 633

---

| 4.7 | Midland funding | | |
|---|---|---|---|

Nonpriority Creditor's Name

8875 Aero Drive Sr.

Number     Street

ste 30 (Northside DR)

City                          State    ZIP Code
SanDiego CA. 92108

Who incurred the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

Is the claim subject to offset?
☑ No
☐ Yes

Last 4 digits of account number  1 0 0 6

When was the debt incurred?   4/22/16

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that
   you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify_____

$ 3005²²

---

PART 2 CONT.

4.8 Gorden Ashworth ? Tomi          3/2016   9785   $5313 62
4023 Wilsi Ave
Eugene OR. 97402

☑ debtor only                         Crield CARD

☑ offset
NO


4.9 LUNV funding LLC                  6099   906 a
700 Creative Center Dr.
Site 300                              11/1/2015
Greenville, SC 29615

debtor 1 ✓

offset NO

4.10 Norrth Shore Agency              9845     85 28
P.O. Box 9221
old bethpage NY
11804
800 745 2935

Debtor 1 _____    Case number (if known)_____

First Name    Middle Name    Last Name

**Part 3:** **List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Name _____

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of  (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured
Claims

Last 4 digits of account number ___ ___ ___ ___

Debtor 1 _____    Case number (if known)_____
First Name    Middle Name    Last Name

| **Part 4:** | **Add the Amounts for Each Type of Unsecured Claim** |
|---|---|

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. § 159.
   Add the amounts for each type of unsecured claim.

Total claims
from Part 1

Total claim

6a. Domestic support obligations          6a. $ _8950_

6b. Taxes and certain other debts you owe the
    government                            6b. $ _0_

6c. Claims for death or personal injury while you were
    intoxicated                          6c. $ _0_

6d. Other. Add all other priority unsecured claims.
    Write that amount here.               6d. + $ _34,350_

6e. Total. Add lines 6a through 6d.       6e. $ _43,300_

Total claims
from Part 2

Total claim

6f. Student loans                         6f. $ _0_

6g. Obligations arising out of a separation agreement
    or divorce that you did not report as priority
    claims                                6g. $ _0_

6h. Debts to pension or profit-sharing plans, and other
    similar debts                         6h. $ _0_

6i. Other. Add all other nonpriority unsecured claims.
    Write that amount here.               6i. + $ _22,594_

6j. Total. Add lines 6f through 6i.       6j. $ _22,594_

**D & A Services**
1400 E. Touhy Ave, Ste. G2
Des Plaines, IL 60018

| D&A # | Original Creditor | Current Creditor | Original Account # | Current Balance |
|---|---|---|---|---|
| 4106877 | CitiBank, N.A. | Crown Asset Management, LLC | XXXXXXXXXXXX4785 | $5,313.62 |

Toll Free: 877-685-5791
Fax: 855-226-1835 • Web: https://myaccount.dnasllc.com
Hours of Operations:       M-Th 8 am – 8 pm CST
                           Fri 8 am – 5 pm CST
                           Sat 8 am – 12 pm CST

427

THRIFT EDGAR M
1413 W Cottonwood Ct
Boise, ID 83702-1404

September 15, 2016

Dear THRIFT EDGAR M:

Your Account has been placed with our office to seek a resolution with you for the Total Amount Due on your account. If you cannot pay the amount due today, please call us at 1-877-685-5791 to discuss further arrangements.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

You may pay online by using the following link. Web: https://myaccount.dnasllc.com

***detach below and return in the enclosed envelope with your payment***

1400 E. Touhy Ave
Suite G2
Des Plaines, IL 60018

877-685-5791

| D&A# | Current Balance |
|---|---|
| 4106877 | $5,313.62 |

| Contact Number | Payment Amount |
|---|---|
|  | $ |

THRIFT EDGAR M
1413 W Cottonwood Ct
Boise, ID 83702-1404

Make your check or money order payable to:
D & A Services
1400 E. Touhy Ave
Suite G2
Des Plaines, IL 60018

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

00092

800-745-2935 EXT-14449

ID# 1533 5005 1303, ACCT NO-7929845 ,TYPE-TP/TXD

**NORTH SHORE AGENCY**         270 SPAGNOLI ROAD, SUITE 110 • MELVILLE, NY 11747



DECEMBER 3, 2015

RE: Disney Movie Club

Membership #:    845

Amount Due: $85.78

EDGAR THRIFT
1413 W COTTONWOOD CT
BOISE ID 83702-1404

# STATEMENT OF DEBT RECOVERY

North Shore Agency has been retained by our client to recover the total amount you owe them. We hereby pursue payment with due diligence.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

## STATEMENT OF YOUR INDEBTEDNESS

Your failure to reply to previous notice from this collection agency and our client has left us no alternative other than to proceed hereby with collection of your debtor account.  Your full payment will change the delinquent status of your account.

## STATEMENT OF INTENTIONS

Resolve this matter with your response.  Make your full payment in the form of a check or money order, payable to the Disney Movie Club, and mail it in the enclosed envelope. If necessary, you may contact our client directly at 800-362-4587. Send correspondence, other than payments, to this collections agency at P.O. Box 9221, Old Bethpage, NY 11804.

To **contact us** using our electronic message contact form, GO TO: www.northshoreagency.biz/tp

NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION

DECEMBER 3, 2015

G8CTJB11  2BBRZ   UD122AY001*TXD*

**Member #:    845**
**Disney Movie Club**

DISNEY MOVIE CLUB
PO BOX 758
NEENAH WI 54957-0758

PAY THIS AMOUNT  **$85.78**



EDGAR THRIFT
1413 W COTTONWOOD CT
BOISE ID 83702-1404



NSASB2



PO BOX 5645
ORANGE, CA 92863
844-764-7368

February 11, 2015

EDGAR THRIFT
1413 W COTTONWOOD CT
BOISE, ID 83702

Dear EDGAR THRIFT,

Congratulations on your new loan with LoanMe. We appreciate the opportunity to service your account. Enclosed is some information about your loan, as well as information on how to contact us and where to send in extra payments.

All payments will be automatically withdrawn on the 1st of every month. We also offer different draft dates for payment, simply call our customer service line to discuss additional draft dates.

If you have a new account, simply fill out the enclosed form provided and return to it to us. You may fax it to 949-535-9150 or email it to customer.service@LoanMe.com.

*Please give us 3 business days notice for any changes to your bank account or withdrawal date.*

Other loans and credit card companies use compound interest. With compound interest, the interest charged on the principal is actually added to your principal for the next period. Your LoanMe loan is a simple interest loan; your principal amount never increases. In other words, you will never pay interest on your interest.

Many lenders do not want you to pay back your loan early, so they will charge you money for pre-paying the loan. We do not charge any pre-payment fees, and we encourage you to pay off your loan early or any portion of your loan anytime.

If you wish to send in additional payments toward your loan principal, you can either send a check, cashier's check or money order in the mail. We also accept check-by-phone. Please be advised that any additional payment will be applied according to your contract.

Again, thank you for choosing LoanMe.

Sincerely,

LoanMe
Customer Service

Loan ID:    607

**Your 1st payment will be due on:**
**3/1/2015 in the amount of $209.25**

**Regular payments: $351.09**

**Customer Service phone number:**
**844-764-7368**
**Customer Service fax number:**
**949-535-9150**
**Customer Service email address:**
**customer.service@LoanMe.com**

**Monday – Friday**
**8:00am – 5:00pm PST**

**Saturday**
**8:00am – 12:00pm PST**



**Midland Credit Management, Inc.**

2365 Northside Drive, Suite 300, San Diego, CA 92108

04-22-2016

002
P71175 Edgar M Thrift
1413 W Cottonwood Ct
Boise, ID  83702-1404

| | |
|---|---|
| Original Creditor | Citibank, N.A. |
| Original Account Number | 1006 |
| MCM Account Number | 0362 |
| Current Balance | $3,085.27 |
| Current Owner | MIDLAND FUNDING LLC |
| CALL BY DATE | 05-07-2016 |

Call (800) 939-2353

## PRE-LEGAL NOTIFICATION

RE: Citibank, N.A. / Simplicity Card

Dear Edgar,

Midland Credit Management, Inc. has made several attempts to contact you regarding this account. This letter is to remind you that we are considering forwarding this account to an attorney in your state for possible litigation. Upon receipt of this notice, please call (800) 939-2353 to discuss your options.

If we don't hear from you or receive payment by 05-07-2016, we may proceed with forwarding this account to an attorney.

**What are some options you can do to stop this process from continuing?**

1) Mail in $500.00 and call to set up your remaining payments, or
2) Call us to see how to qualify for discounts and affordable payment plans.

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 939-2353.**

### BENEFITS OF PAYING

➤ This may be your last chance to work with us before the account goes to an attorney.

➤ After receiving your final payment, we will consider the account paid.

Account Number at Charge-Off: 4128003312321006
Name of Creditor at Charge-Off: CITIBANK, N.A.

Sincerely,

C. Weber, Division Manager
(800) 939-2353

*If you pay your full balance, we will report your account as **Paid in Full**. If you pay less than your full balance, we will report your account as **Paid in Full for less than the full balance.**

**JM**

**JOHNSON MARK** llc

*ATTORNEYS AT LAW*

Payment Processing Center
P.O. Box 7811
Sandy, Utah 84091-7811
Toll Free: 866-356-3838
Fax: 877-288-5701

*Servicing:*

Arizona
California
Colorado
Hawaii
Idaho
Oregon
Texas
Utah

February 1, 2017

EDGAR THRIFT
1413 W COTTONWOOD CT
BOISE, ID 837021404

**OFFER OF SETTLEMENT**
Current Creditor: *CAPITAL ONE BANK (USA), N.A.*
REFERENCE NUMBER: XXXXXXXXXXXX0634
JM NUMBER: 834101

| | |
|---|---|
| Principal/Charge-Off Balance: | $15749.34 |
| Court and Service Costs: | $276.00 |
| Less Payments Made (if any): | $0.00 |
| Current Balance: | $16025.34 |



Dear Edgar Thrift:

    As you know, CAPITAL ONE BANK (USA), N.A. has a claim against you for the current balance owing as set forth above. We have reviewed the possibility of settling your account. In the spirit of cooperation, our client is willing to accept as settlement an amount less than the balance currently owing.

    Option 1: A lump sum settlement of $8012.67 received in our office no later than 03/31/2017.

    Option 2: A settlement of $11217.74 paid in six (6) equal installments of $1869.62 due on or before the 25th of each month with the first payment due by 04/15/2017.

    Option 3: Monthly payments on the full balance of $500.00 due by the 25th.

    If you desire to accept one of these offers or would like to discuss other options, please call to speak to a representative at 888-599-6333. Please note that until you contact our office and effectively communicate your intent to accept one of the above-referenced offers, collection efforts may continue.

Sincerely,

SEE NEXT PAGE FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS

 \ 50046

# COLLECTION BUREAU
### INCORPORATED
PO BOX 1219 • NAMPA ID 83653-1219 • 208-463-4600 • TOLL FREE 1-888-432-2432

RE: CUSTODY/CHILD SUP
CREDITOR: GOSS GUSTAVEL GOSS PLLC
CBI Account Number: 00886572

Date: September 12, 2016
AMOUNT DUE: $188.19

This account has been assigned to Collection Bureau Incorporated for collection. Do not ignore this notice.

**This communication is from a debt collector.**

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**To dispute the validity of this debt:** Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

**To resolve this debt:** Please make your payment to Collection Bureau Incorporated. Payment can be made by cash, cashier's check, money order, check, check by phone, debit or credit card.

- As of the date of this letter, the amount due is $188.19. Because of interest and other charges, if applicable, that may vary from day to day, the amount due on the day we receive your payment may be greater.

- When you provide a check payment, you authorize us to either process the payment as a check or to use information from your check to make a one-time electronic fund transfer from your account. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution.

- To pay your account online go to www.collectionbureauinc.com/paynow. Please use the following login information:

Access Code: 4600
Account Number: 00886572
Pin Number: 22566

**Important Notice:** Online payments are subject to a convenience fee of 3% that will be added to your payment. By making your payment in this manner, you are consenting and agreeing to this convenience fee. To avoid this fee, you may instead send a payment to our office by mail or pay your bill today in person.

Thank you for your prompt attention to this matter.

---

Return this portion of the notice with your payment

PO BOX 1219
NAMPA ID 83653-1219

(    ) I want to discuss monthly payments. Call me at_____

| CREDIT CARD CHOICES | ☐ VISA | ☐ DISCOVER | ☐ mastercard | ☐ DEBIT CARD |
|---|---|---|---|---|
| ACCOUNT NUMBER | | | EXP DATE | |
| AMOUNT | | CVV | | |
| Signature | | | | |

A convenience fee of 3% will be added to all payments made by debit or credit card.

| ACCOUNT # | AMOUNT DUE |
|---|---|
| 572 | $188.19 |

RETURN SERVICE REQUESTED

ıllıİıııİlılıİlllıııİlııİlılıİlılıİllıııİlılıİlıllıİlılıİlıll

ED THRIFT
1413 W COTTONWOOD CT
BOISE ID 83702-1404

Remit To:
COLLECTION BUREAU, INC.
PO BOX 1219
NAMPA ID 83653-1219
208-463-4600

CSN001-0912-775246936-03884-3884



## Northland Group Inc.

866-670-8659 ext 3177
For General Business Hours, please visit us at:
www.payments2northland.com

April 1, 2016

**ACCOUNT INFORMATION**
**Client:** CAPITAL ONE BANK (USA), N.A.
**Original Account #:** ************8754
PAYMENT ADDRESS:
P.O. Box 390846, Minneapolis, MN 55439
**NORTHLAND REFERENCE NUMBER**
F62459917
**Account Balance:** $633.16
**Settlement Offer:** $411.54

Ed M Thrift
1413 W Cottonwood Ct
Boise, ID 83702



Your Settlement Offer $411.54

Dear Ed M Thrift,

In view of tax season, Our client, CAPITAL ONE BANK (USA), N.A., will allow you to settle your account for $411.54 in 3 payments starting on 04/22/16. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Once all three payments have been paid to our office on time, a letter will be sent confirming the above referenced account has been resolved.  Please send in the payments along with a payment stub to the address below.

Thank you,

Northland Group, Inc.

This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.
This communication is sent to you by Northland Group, Inc., a debt collector and a member of ACA International.

 Pay Online: www.payments2northland.com

 Pay by Phone: Please call Northland Group, Inc. toll-free at 866-670-8659 ext 3177. We offer check by phone, Western Union, and debit card.

 Pay by Mail: Send payments to PO Box 390846, Minneapolis, MN 55439.

EDGAR MILTON THRIFT III
Account Number:          3188
September 26 - October 25, 2015

**Account Information:**
www.bankofamerica.com

**Mail billing inquiries to:**
Bank of America
P.O. Box 982235
El Paso TX  79998-2235

**Mail payments to:**
Bank of America
P.O. Box 851001
Dallas TX 75285-1001

**Customer Service:**
1.800.421.2110

(1.800.346.3178 TTY)

## Payment Information

| | |
|---|---|
| New Balance Total | $1,324.52 |
| Current Payment Due | $25.00 |
| Past Due Amount | $321.00 |
| Total Minimum Payment Due | $346.00 |
| Payment Due Date | 11/22/15 |

**Late Payment Warning:** If we do not receive your Total Minimum Payment by the date listed above, you may have to pay a late fee of up to $38.00 and your APRs may be increased up to the Penalty APR of 29.99%.

**Total Minimum Payment Warning:** If you make only the Total Minimum Payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay | You will payoff the balance shown on this statement in about | And you will end up paying an estimated total of |
|---|---|---|
| Only the Total Minimum Payment | 6 years | $2,043.00 |

If you would like information about credit counseling services, call 1-866-300-5238.

## Account Summary

| | |
|---|---|
| Previous Balance | $1,319.68 |
| Payments and Other Credits | 0.00 |
| Purchases and Adjustments | 0.00 |
| Fees Charged | 0.00 |
| Interest Charged | 4.84 |
| New Balance Total | $1,324.52 |
| Total Credit Line | $1,000.00 |
| Total Credit Available | $0.00 |
| Cash Credit Line | $200.00 |
| Portion of Credit Available for Cash | $0.00 |
| Statement Closing Date | 10/25/15 |
| Days in Billing Cycle | 30 |

## Transactions

| Transaction Date | Posting Date | Description | Reference Number | Account Number | Amount | Total |
|---|---|---|---|---|---|---|
| | | **Interest Charged** | | | | |
| 10/25 | 10/25 | INTEREST CHARGED ON PURCHASES | | 3188 | 2.10 | |
| 10/25 | 10/25 | INTEREST CHARGED ON BANK CASH ADVANCES | | 3188 | 2.74 | |
| | | TOTAL INTEREST FOR THIS PERIOD | | | | $4.84 |

25   00132452000346000000000000005490331699333188

BANK OF AMERICA
P.O. BOX 851001
DALLAS TX 75285-1001

սիլխրվեսեսիվիներիներիներիներիների

SS 1029  N 973 535 1      17542 #@01 AT 0.416
EDGAR MILTON THRIFT III
1413 W COTTONWOOD CT
BOISE ID 83702-1404

Account Number:          3188

| | |
|---|---|
| New Balance Total | $1,324.52 |
| Total Minimum Payment Due | 346.00 |
| Payment Due Date | 11/22/15 |

Enter payment amount   $

☐ *Check here for a change of mailing address or phone numbers.*
*Please provide all corrections on the reverse side.*
Mail this coupon along with your check payable to: Bank of America



⑈524022250⑈  1587169933318⑈⑈

Suite 11B
8918 W. 33rd Street N.
Wichita, KS 67205
Telephone 866-398-2089
Fax 316-771-8880

04/05/2016

File #: 0154-P-004856215

**Deferred Payment Agreement**

Dear Ed Thrift,

As you may know your balance of $1,196.82 with Speedy Cash remains unpaid and has been forwarded to this agency as a collection account. The current amount due has been reported as an **UNPAID COLLECTION** to the applicable **NATIONAL CREDIT BUREAUS**.

Our client has authorized us to offer a payment plan that will allow you to bring your account current and reclaim you as a customer. The terms of this plan are established between Ed Thrift referred to hereinafter as Consumer, and Ad Astra Recovery Services, Inc., acting as authorized by our client Speedy Cash.

Under the plan it is agreed that the Consumer owes our client a past due balance of $1,196.82. Consumer agrees to make payments to Ad Astra Recovery Services, Inc. as described below.

|  | Due Date | Amount |
|---|---|---|
| First Payment | 04/19/2016 | $299.21 |
| Second Payment | 05/03/2016 | $299.21 |
| Third Payment | 05/17/2016 | $299.21 |
| Fourth Payment | 05/31/2016 | $299.21 |

*Under certain circumstances an even more flexible payment plan may be arranged. Please call 866-398-2089 for more information.
*Ad Astra reports payments on collection accounts to three **NATIONAL CREDIT BUREAUS** monthly.

Consumer understands that if any of the above payments are missed then this agreement is void and Ad Astra Recovery Services, Inc. may resume collection efforts. Consumer further understands that once this offer has expired, we are not obligated to renew it.

The remaining terms and conditions of your loan agreement with Speedy Cash remain in full force and effect, including the Agreements for Resolving Dispute section.

In order to activate this agreement, sign below and return this agreement along with your first payment by 04/19/2016. You may also activate this agreement by contacting our office at 866-398-2089 and speaking with a trained recovery specialist.

Please Sign Here._____ Date_____

**This communication is from a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose.**

---

Please detach and return this portion with your payment.

PO Box 101928 Dept. 1911
Birmingham, AL 35210



23555

Visa [ ] MasterCard [ ] Name:_____
Signature:_____
Address:_____
CREDIT CARD NO.:
[ ][ ][ ][ ] [ ][ ][ ][ ] [ ][ ][ ][ ] [ ][ ][ ][ ]
EXPIRATION DATE:        PAYMENT AMOUNT:
[ ][ ][ ][ ]        $_____

File #: 0154-P-004856215
Total Due: $1,196.82

Ad Astra Recovery Services Inc.
8918 W 21 Street N, Suite 200, PMB 303
Wichita, KS 67205-1880

60610-05A*123*
Ed Thrift
1413 W Cottonwood Ct
Boise, ID 83702-1404

AA_017 0111

Pay your bill on line at http://adastra.statementmanagement.com

B 6G (Official Form 6G) (12/07)

In re _Elgin M Pruitt III_        Case No. _17 - 01668 - JDP_
     **Debtor**                                         **(if known)**

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST.  STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY.  STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| 1206 W. LEMP ST  BOISE, ID 83702<br><br>ANTHONY FRANCO | Residential Rental lease of Personal Rental Property located @ 1206 W. Lemp St. Boise, ID 83702 |
| 2127 N. Cartney DR Boise, ID 83714  E.T. | Residential Rental lease of Personal Rental property located @ 2127 N. Cartney DR Boise 83714 |
| 16012 N. 20TH ST. NAMPA, IDAHO 83687<br><br>Linkus Enterprises LLC | Commercial Rental Agreement of Personal Commercial Rental property leased @ 16012 N. 20th St, Nampa ID. 83687 |
| AT&T monthly phone service for 2 phones — 50 N. Minute St me & daughters phones used Boise, ID 83704 | monthly phone service for me & daughters phones used Personally & for Business |
| 702 W. Idaho St. Boise, ID 83702<br>Century link wireless Internet provider | Monthly internet service used at 413 cottonwood Ct. Boise, ID. 83702 |
| | * used for both Personal AND Business purposes |

## RESIDENTIAL RENTAL AGREEMENT AND DEPOSIT RECEIPT

Address of Rental: _1206 W- LEMP_

The following amounts were received from: _Anthony Franco_
Rent for the period from _1/1/18 — 1/1/19_    $1000   AF C.J
Security/damage deposit    $1200   AF C.J
TOTAL

     _1/3/18_     1/5/18

1. Terms of agreement shall begin on _1/3/18_ and continue for ~~six months~~ YEAR and then on a month-to-month basis until either party gives a 30-day written notice delivered by certified mail or in person.

2. Rent shall be _1000_ per month, payable in advance upon the 1st day of each calendar month to the owner or authorized agent at the following address _1413 caffenwad Ct., Boise 83702_ or at such other places as may be designated by the owner. In the event that the rent is not paid by the ~~5th~~ day the month, tenant agrees to pay a late charge of $25.00 plus an additional charge of $10.00 per day for each day the rent is past due, beginning on the 5th day of each calendar month. Tenant further agrees to pay $10.00 for each dishonored bank check. The late charge period is not a grace period, and owner is entitled to make written demand for any unpaid rent on the 2nd day of the rental period.

3. Multiple Occupancy: Only people that signed an agreement with the owner can live at the rental location. Should, at any time, a tenant have visitors or overnight guests, the tenant is responsible for any damage their friends may do to the property.

4. Utilities: Tenant shall be responsible for the following utilities: _WATER ELECTRIC Sewer / TRASH_ .

5. Use: The premises shall be used exclusively as a residence for no more than _____ persons. Guests staying more than a total of 30 days in a calendar year without written consent of the owner shall constitute a violation of this agreement.

6. Animals: No animals shall be brought on the premises without the prior consent of the owner. Owner has approved two rabbits.

7. House Rules: Tenant agrees to abide to all house rules whether the rules were initiated before or after this signed agreement, including, but not limited to excessive noise, odors, disposal of refuse, animals, parking, and use of common areas.

8. Maintenance, Repairs, or Alterations: Tenant acknowledges that the premises are in good order and repair. Tenant shall at his own expense, and at all times, maintain the premises in a clean and sanitary manor, including equipment and appliances and surrender the same at time of

termination of agreement. Tenant shall not paper, paint, redecorate, or make alterations without the consent of the owner.

9. Entry and Inspection: Owner shall have the right to enter the premises in case of emergency, to make necessary repairs, decorations, alterations, improvements, or to show the premises to prospective or actual purchasers, mortgagees, tenants, workman or contractors, when tenant has abandoned or surrendered the premises.

10. Indemnification: Owner shall not be liable for any damage or injury to tenant, or any other person, or to any property, occurring on the premises or any part thereof, or in common areas thereof, unless such damage is the result of the negligence or unlawful act of owner, his/her agent, or his/her employees. Tenant agrees to hold owner harmless from any claims for damages, no matter how caused, except for injury or damages for which owner is legally responsible.

11. Default: If tenant fails to pay rent when due, maintain clean and sanitary premises, refrain from making excessive noise, deface the premises, or fails to perform any term of the rental agreement, after no less than a 3 day written notice of such default given in a manner required by law, the owner, at his/her option may terminate all rights of the tenant. If tenant abandons or vacates the property, while in default of payment of rent, owner may consider any property left on the premises to be abandoned and may dispose of the same in any manor allowed by law.

12. Deposit Refunds: To be eligible for a deposit refund, tenant must rent said rental for six months and give 30-day notice to vacate prior to the end of the month. The rent must be paid in full, and the rental must be left clean.

13. Termination of Agreement: Either party may terminate this agreement in writing giving the other party not less than 30 days prior to the desired termination date except in the case of default at which time only a 3 day written notice is required. Tenant's liability for payment of rent shall continue until the termination date.

14. Lost or Stolen Property: Owner shall not be responsible for any of tenant's property, lost or stolen either from tenant's rented premise or from any parking, storage, or common area in or about the building or premises, and tenant assumes all responsibility for the security and safekeeping of any such property.

15. Forbearance Not A Waiver: Any forbearance by owner or failure by owner to strictly enforce all of such terms and conditions of this agreement shall not under any circumstances be construed as a waiver of owner's right to strictly enforce all of the terms and conditions in the event of any further, continued, or additional default by tenant.

Tenant has read and agrees to this rental agreement.

_Anthony Frances_                    _1/5/18_
Tenant                                       Date

_____            _1/7/18_

# RESIDENTIAL RENTAL AGREEMENT AND DEPOSIT RECEIPT

Address of Rental: _____ *2127 N. Courtney dr.*

The following amounts were received from: *Diane Mapple* *Boise, ID 8374*

Rent for the period from _____ *January* _____ *$1275 January Rent*

Security/damage deposit _____ *For Tenant* _____ *1200 Deposit*

TOTAL _____ *$2475* *1/1/18*

1. Terms of agreement shall begin on _____ *Jan 1/18* _____ and continue for six months and then on a ~~month-to-month basis~~ until either party gives a 30-day written notice delivered by certified mail or in person.

2. Rent shall be *$1275* per month, payable in advance upon the 1st day of each calendar month to the owner or authorized agent at the following address *1413 cottonwood ct. Boise ID 8377* or at ~~such other~~ places as may be designated by the owner. In the event that the rent is not paid by the 5th day the month, tenant agrees to pay a late charge of $25.00 plus an additional charge of $10.00 per day for each day the rent is past due, beginning on the 5th day of each calendar month. Tenant further agrees to pay $10.00 for each dishonored bank check. The late charge period is not a grace period, and owner is entitled to make written demand for any unpaid rent on the 2nd day of the rental period. *Tenant to pay late fee of $10.7 oo*

3. Multiple Occupancy: Only people that signed an agreement with the owner can live at the rental location. Should, at any time, a tenant have visitors or overnight guests, the tenant is responsible for any damage their friends may do to the property.

4. Utilities: Tenant shall be responsible for the following utilities: *X All utilities — sewer, trash, electricity, water, gas*

5. Use: The premises shall be used exclusively as a residence for no more than *4* persons. Guests staying more than a total of 30 days in a calendar year without written consent of the owner shall constitute a violation of this agreement.

6. Animals: No animals shall be brought on the premises without the prior consent of the owner. Owner has approved two rabbits. *(2) dogs — $1250 to be received Feb 1*

7. House Rules: Tenant agrees to abide to all house rules whether the rules were initiated before or after this signed agreement, including, but not limited to excessive noise, odors, disposal of refuse, animals, parking, and use of common areas.

8. Maintenance, Repairs, or Alterations: Tenant acknowledges that the premises are in good order and repair. Tenant shall at his own expense, and at all times, maintain the premises in a clean and sanitary manor, including equipment and appliances and surrender the same at time of

termination of agreement. Tenant shall not paper, paint, redecorate, or make alterations without the consent of the owner.

9. **Entry and Inspection:** Owner shall have the right to enter the premises in case of emergency, to make necessary repairs, decorations, alterations, improvements, or to show the premises to prospective or actual purchasers, mortgagees, tenants, workman or contractors, when tenant has abandoned or surrendered the premises.

10. **Indemnification:** Owner shall not be liable for any damage or injury to tenant, or any other person, or to any property, occurring on the premises or any part thereof, or in common areas thereof, unless such damage is the result of the negligence or unlawful act of owner, his/her agent, or his/her employees. Tenant agrees to hold owner harmless from any claims for damages, no matter how caused, except for injury or damages for which owner is legally responsible.

11. **Default:** If tenant fails to pay rent when due, maintain clean and sanitary premises, refrain from making excessive noise, deface the premises, or fails to perform any term of the rental agreement, after no less than a 3 day written notice of such default given in a manner required by law, the owner, at his/her option may terminate all rights of the tenant. If tenant abandons or vacates the property, while in default of payment of rent, owner may consider any property left on the premises to be abandoned and may dispose of the same in any manor allowed by law.

12. **Deposit Refunds:** To be eligible for a deposit refund, tenant must rent said rental for ~~six months~~ *2 years* and give 30-day notice to vacate prior to the end of the month. The rent must be paid in full, and the rental must be left clean.

13. **Termination of Agreement:** Either party may terminate this agreement in writing giving the other party not less than 30 days prior to the desired termination date except in the case of default at which time only a 3 day written notice is required. Tenant's liability for payment of rent shall continue until the termination date. *(End of lease)*

14. **Lost or Stolen Property:** Owner shall not be responsible for any of tenant's property, lost or stolen either from tenant's rented premise or from any parking, storage, or common area in or about the building or premises, and tenant assumes all responsibility for the security and safekeeping of any such property.

15. **Forbearance Not A Waiver:** Any forbearance by owner or failure by owner to strictly enforce all of such terms and conditions of this agreement shall not under any circumstances be construed as a waiver of owner's right to strictly enforce all of the terms and conditions in the event of any further, continued, or additional default by tenant.

Tenant has read and agrees to this rental agreement.

Tenant _____ 1/10/18
                              Date

_____ 1/10/18

Commercial
~~E. VI.~~ **REAL ESTATE LEASE**

THIS LEASE AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into this day of , by and between Edgar M Thrift 3rd (hereinafter referred to as "Lessor") and Linkus Enterprises, LLC (hereinafter referred to as "Lessee"). No other tenants are allowed without the written consent of the Lessor, or the execution of a new lease/rental agreement.

W I T N E S S E T H:

WHEREAS, Lessor is the landlord of certain real property being, lying and situated in Canyon County, Idaho such real property having a street address of

16012 N 20th Street, Nampa 83687

The property is described as follows: Single Unit Commercial Building, Approximately 3000 Rentable Square Feet Of Space (herein After "premises ") In The Building Known As K-20 Located At 16012 N 20th St, Nampa, Id, 83687(herein After "building") located at Single Level , Single Unit Commercial Building, Approximately 3000 Rentable Square Feet Of Space In Building Known As K-20 Located At 16012 N 20th St Nampa ID 83687 (hereinafter referred to as "Premises").

WHEREAS, Lessor is desirous of leasing the Premises to Lessee upon the terms and conditions as contained herein; and

WHEREAS, Lessee is desirous of leasing the Premises from Lessor on the terms and conditions as contained herein,

NOW, THEREFORE, the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

TERM. The lease term begins on 10/01/2016, (hereinafter referred to as "Commencement Date") and shall terminate at 12 o'clock midnight on 10/01/2017. Lessee shall vacate the premises upon termination of the Agreement, unless (i) Lessor and Lessee have extended this agreement or signed a new agreement; (ii) Lessor accepts rent from Lessee (other than past due rent), in which case a month-to-month tenancy shall be created which either party may terminate by a thirty (30) day written notice. In the event a month-to-month tenancy results, rent shall be at a rate agreed to by Lessor and Lessee, or as allowed by law; all other terms and conditions of this Agreement shall remain in full force and effect.

RENT. Rent shall mean all monetary obligations owed from Lessee to Lessor under the terms of this Agreement, except for security deposit, if any.

(1) **Amount.** The total rent for the term hereof is the sum of $2,150.00 per month for the term of the Agreement.

(2) Due Date. Rent is payable on the First day of each month of the term and can be late 5th days after aforementioned date. The first month's installment is to be paid upon the due execution of this Agreement.

(3) **Commencement Date.** Rent for the period beginning on the Commencement Date is due no later than seven (7) days prior to the commencement date. All other payments are to be paid as set forth in the Rent Section, paragraphs (1) and (2) above.

(4) **Early Termination.** In the event of early termination, Lessee is required to pay $1,000.00, or the remaining balance of the lease agreement, whichever is less, as an early termination fee.

(5) Payment Information. All such payments shall be made to Lessor at Lessor's address listed here: 1413 Cottonwood Ct, Boise, Idaho 83702 or any other location subsequently specified by Lessor in writing to Lessee, on or before the due date and without demand. If any payment is returned for non-sufficient funds, stop

payment, or account closure by Lessee's bank, the Lessor may charge appropriate fees, as detailed in the Late Charge Section below.

**NON-REFUNDABLE FEE.** Lessor shall collect from Lessee a non refundable fee of $1,500.00. The fee shall be collected prior to the execution of the lease, and shall not be returned to the lessee at the expiration of the lease.

**DAMAGE TO PREMISES.** If, by no fault of Lessee, Premises are totally or partially damaged or destroyed by fire, earthquake, flood, storm, accident, civil commotion, or other unavoidable cause so as to render the Premises totally or partially uninhabitable, either Lessor or Lessee may terminate this Agreement by giving the other written notice. Rent shall be prorated on the date the premises became totally or partially uninhabitable. The prorated amount shall be the current monthly Rent prorated on a thirty (30) day period. If the Agreement is not terminated, Lessor shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Lessee's reasonable use of the Premises. If damage occurs as a result of an act of Lessee or Lessee's guests, only Lessor shall have the right of termination, and no reduction in Rent shall be made.

**INSURANCE:** Lessee's or guests' personal property and vehicles are not insured by Lessor against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Lessee is advised to carry Lessee's own insurance (Renter's Insurance) to protect Lessee from any such loss or damage. Lessee shall comply with any requirement imposed on Lessee by Lessor's insurer to avoid: (i) an increase in Lessor's insurance premium (or Lessee shall pay for the increase in premium); or (ii) loss of insurance.

The Lessor is responsible for paying and maintaining the following Rental Property taxes and insurances:

- Casualty Insurance
- Fire Coverage Insurance

**LATE CHARGE.** Lessee acknowledges that late payment of Rent may cause Lessor to incur costs and expenses the exact amount of which is extremely difficult and impractical to determine. These costs may include but are not limited to: processing, enforcement, accounting expenses and late charges imposed on the Lessor. Partial payments are not accepted. In the event that any payment required to be paid by Lessee hereunder is not made within 5th days, Lessee shall pay to Lessor, in addition to such payment or other charges due hereunder, a "late fee" in the amount of $75.00. Late fees are deemed additional Rent.

**RETURNED CHECKS.** Lessee acknowledges that the issuance of a returned check may cause Lessor to incur additional costs and expenses, the exact amount of which is extremely difficult and impractical to determine. If any payment is returned by the financial institution, for any reason, Lessor may require all future payments to be made in cash or by certified check. In addition, Lessee shall pay a $75.00 returned check fee. All fees, late fees, and service charges incurred by the Lessee as well as any expenses including reasonable attorney's fees incurred by Lessor in instituting and prosecuting any actions by reason of any default of Lessee hereunder shall be deemed to be additional rent and shall be due from Lessee to Lessor immediately following the incurring of the respective expenses, the nonpayment of which shall be a breach of this agreement for nonpayment of rent.

**USE OF PREMISES.** The Premises shall be used and occupied by Lessee and Lessee's immediate family, consisting of 0 people, exclusively, and no part of the Premises shall be used at any time during the term of this Agreement by Lessee for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private dwelling. Lessee shall not allow any other person, other than Lessee's immediate family or transient relatives and friends who are guests of Lessee, to use or occupy the Premises without first obtaining Lessor's written consent to such use. Lessee shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises.

**HOUSEHOLD MEMBERS AND GUESTS.** Any additions to the household members named on the lease, including live-in aides and foster children, but excluding natural births, require the advance written approval of the Lessor. Such approval will be granted only if the new family members pass the Lessor's screening criteria and a unit of the appropriate size is available. Permission to add live-in aides and foster children shall not be

**EVICTION BY COURT ACTION.** The Lessor may only evict the Lessee from the contract unit by instituting a court action.

**LESSOR TERMINATION NOTICE.** The Lessor must give the Lessee a notice that specifies the grounds for termination of tenancy. The notice of grounds must be given at or before commencement of the eviction action. The notice of grounds may be included in, or may be combined with, any Lessor eviction notice to the Lessee. Lessor eviction notice means a notice to vacate, or a complaint used under State or local law to commence an eviction action.

**LESSEE'S OBLIGATIONS UPON VACATING PREMISES.** Upon the termination of the Agreement, Lessee shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements accepted.

(1)     Upon the termination of the Agreement, Lessee shall: (i) give Lessor all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender the Premises to Lessor, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises as specified in Lessee's Obligations Upon Vacating Premises Section (2) below, to Lessor in the same condition as referenced in Maintenance and Repair; Rules Section above; (v) remove all debris; (vi) give written notice to Lessor of Lessee's forwarding address.

(2)     Right to Pre-Move-Out Inspection and Repairs as follows: (i) After giving or receiving notice of termination of a tenancy, or before the end of a lease, Lessee has the right to request an inspection on Premises take place prior to termination of the lease or rental. If Lessee requests an inspection, Lessee shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the premises as a result of this inspection (collectively, "Repairs") shall be made at Lessee's expense. Repairs may be performed by Lessee or through others, who have adequate insurance and licenses and are approved by Lessee. The work shall comply with applicable law, including governmental permit inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all repairs may not be possible. (iii) Lessee shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Lessee and the date of such Repairs; and (c) provide copies of receipts and statements to Lessor prior to termination.

**PETS.** Pets are not allowed at the Premises without the express written consent of Lessor. No animal that is undomesticated or that is considered illegal according to federal, state or local law will be tolerated at the Premises. Lessee will be responsible for any possible damage caused by an authorized or unauthorized pet, including but not limited to: damage to house (and yard) caused by urination/defecation, pests brought into the property on or by the animal, damage to the house, yard or third parties caused by actions of the pet (scratching, clawing, biting, etc.), or any claims brought by a third party due to the animal.

**QUIET ENJOYMENT.** Lessee, upon payment of all of the sums referred to herein as being payable by Lessee and Lessee's performance of all Lessee's agreements contained herein and Lessee's observance of all rules and regulations, shall and may peacefully and quietly have, hold and enjoy said Premises for the term hereof.

**INDEMNIFICATION.** Lessor shall not be liable for any damage or injury of or to the Lessee, Lessee's family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the Premises are a part, and Lessee hereby agrees to indemnify, defend and hold Lessor harmless from any and all claims or assertions of every kind and nature.

**DEFAULT.** If Lessee fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Lessor, or materially fails to comply with any duties imposed on Lessee by statute, within seven (7) days after delivery of written notice by Lessor specifying the non-compliance and indicating the intention of Lessor to terminate the Lease by reason thereof, Lessor may terminate this Agreement.

(1) **Acceleration.** If Lessee fails to pay rent when due and the default continues for seven (7) days thereafter, Lessor may, at Lessor's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Lessor at law or in equity or may immediately terminate this Agreement.

**JOINT AND INDIVIDUAL OBLIGATIONS.** If there is more than one Lessee, each one shall be individually and completely responsible for the performance of all obligations of Lessee under this Agreement, jointly with every other Lessee, and individually, whether or not in possession.

**ABANDONMENT.** If at any time during the term of this Agreement Lessee abandons the Premises or any part thereof, Lessor may, at Lessor's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Lessee for damages or for any payment of any kind whatsoever. Lessor may, at Lessor's discretion, as agent for Lessee, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Lessor's option, hold Lessee liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Lessor by means of such reletting. If Lessor's right of reentry is exercised following abandonment of the Premises by Lessee, then Lessor shall consider any personal property belonging to Lessee and left on the Premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and Lessor is hereby relieved of all liability for doing so.

**ATTORNEYS' FEES.** Should it become necessary for Lessor to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Lessee agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

**WAIVER.** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

**NOTICE.** Notices may be served at the following addresses, or at any other location subsequently designated:

**If to Lessor:** Edgar M Thrift 3rd

1413 Cottonwood Ct
Boise, Idaho 83702

**If to Lessee:** Linkus Enterprises, LLC

16012 N 20th Street
Nampa, Idaho 83687

**RECORDING OF AGREEMENT.** Lessee shall not record this Agreement on the Public Records of any public office. In the event that Lessee shall record this Agreement, this Agreement shall, at Lessor's option, terminate immediately and Lessor shall be entitled to all rights and remedies that it has at law or in equity.

**LESSEE REPRESENTATIONS; CREDIT.** Lessee warrants that all statements in Lessee's rental application are accurate. Lessee authorizes Lessor and Broker(s) to obtain Lessee's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Lessor may cancel this Agreement: (i) before occupancy begins; (ii) upon disapproval of the credit report(s); or (iii) at any time upon discovering that information in Lessee's application is false. A negative credit report reflecting on Lessee's record may be submitted to a credit reporting agency if Lessee fails to fulfill the terms of payment and other obligations under this Agreement.

**GOVERNING LAW.** This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Idaho.

unreasonably refused.  Lessee agrees not to have the same overnight guest that has not passed the Lessor's
screening criteria for more than 0 consecutive nights, and no more than a total of 0 nights per year.

**CONDITION OF PREMISES.** Lessee stipulates, represents and warrants that Lessee has examined the
Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and leasable
condition.  Lessee has examined and determined that all appliances and fixtures, if any, including smoke
detector(s), are clean and in operable condition, within one month of move-in.

**KEYS; LOCKS.** The Lessee shall be issued 1 keys to the property and N/a keys to the mailbox by the Lessor at
the signing of this Agreement.  In the event the Lessee loses the keys that were issued at the signing of this
agreement and the Lessee requests more keys from the Lessor, the Lessee will be required to pay in advance
$100.00 per key requested.

(1)**Lock Out.** There will be a $100.00 charge for the second and each subsequent time Lessor is called to
let any of the Lessees into the Premises, whatever the reason. The charge to unlock your door is $100.00 After
Hours.

(2)**Re-Keys Existing Locks.**  In the event Lessee re-keys existing locks or opening devices, Lessee shall
immediately deliver copies of all keys to Lessor.  Lessee shall pay all costs and charges related to loss of any keys
or opening devices.  Lessee may not remove locks, even if installed by Lessee.

**ASSIGNMENT AND SUB-LETTING.** Lessee shall not assign this Agreement, or sub-let or grant any license to
use the Premises or any part thereof without the prior written consent of Lessor. Unless such consent is obtained,
any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Lessee,
operation of law or otherwise, shall, at the option of Lessor, terminate this Agreement.  Any proposed assignee,
transferee or sub-lessee shall submit to Lessor an application and credit information for Lessor's approval and, if
approved, sign a separate written agreement with Lessor and Lessee.  Lessor's consent one such assignment, sub-
letting or license shall not be construed as consent to any subsequent assignment, transfer or sublease and does not
release Lessee or Lessee's obligations under this Agreement.  An assignment, sub-letting or license without the
prior written consent of Lessor or an assignment or sub-letting by operation of law shall be absolutely null and void
and shall, at Lessor's option, terminate this Agreement.

**ALTERATIONS AND IMPROVEMENTS.** Lessee shall make no alterations to the buildings or improvements
on the Premises or construct any building or make any other improvements on the Premises without the prior
written consent of Lessor. Any and all alterations, changes, and/or improvements built, constructed or placed on
the Premises by Lessee shall, unless otherwise provided by written agreement between Lessor and Lessee, be and
become the property of Lessor and remain on the Premises at the expiration or earlier termination of this
Agreement.  Lessor may charge Lessee for restoration of the Premises to the condition it was in prior to any
alterations/improvements.  Lessee shall not make any repairs, alterations, or improvements in or about the
Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es),
placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials.  Lessor
shall not be responsible for costs of alternations or repairs made by Lessee. Lessee shall not deduct from Rent the
costs of any repairs, alternations or improvements and any deduction made by Lessee shall be considered unpaid
Rent.

**NON-DELIVERY OF POSSESSION.**  Lessee is not in position of the Premises.  In the event Lessor cannot
deliver possession of the Premises to Lessee upon the Commencement Date, such Date shall be extended to the
date on which possession is made available to Lessee.  If non-delivery of possession is through no fault of Lessor
or its agents, then Lessor or its agents shall have no liability, but the rental herein provided shall abate until
possession is given. Lessor or its agents shall have thirty (30) days in which to give possession, and if possession
is tendered within such time, Lessee agrees to accept the demised Premises and pay the rental herein provided from
that date.  In the event possession cannot be delivered within such time, through no fault of Lessor or its agents,
then Lessee may terminate this Agreement by giving written notice to Lessor, and Lessee shall be refunded all
Rent and security deposit paid.  Possession is deemed terminated when Lessee has returned all keys to the
Premises to Lessor.

**HAZARDOUS MATERIALS.** Lessee shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

**LEAD-BASED PAINT DISCLOSURE.** This property was not built before 1978. Housing built before 1978 may contain lead-based paint. Lead paint, paint chips and dust can cause health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of lead-based paint hazards in the dwelling. Renters must also receive a federally-approved pamphlet on lead poisoning prevention.

**UTILITIES.** Lessee shall be responsible for arranging and paying for all utility services required on the Premises.

**STORAGE.** Storage is permitted as follows: Lessee shall store only personal property Lessee owns, and shall not store property claimed by another or in which another has any right, title or interest. Lessee shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

**VEHICLES/PARKING.** Parking is permitted as follows: Parking is to be used only for properly licensed and operable motor vehicle. NO trailers, boats, campers, recreational vehicles, busses, trucks or unregistered vehicles are to be brought on the premises. NO parking or driving on the property lawn or neighbor's lawns or driveway is permitted. Any cars found parked on the lawn will be towed at Lessee's expense. Parking space is to be kept clean and cars must be parked in an orderly fashion. Mechanical work on inoperable vehicles in not permitted in garage or parking space or elsewhere on the Premises. The Lessor, at the Lessees expense, may remove disabled vehicles and unregistered vehicles at any time. NO vehicle maintenance may be performed on the property (i.e. oil changes, brake changes, etc.). Town parking restrictions must be followed.

**NEIGHBORHOOD CONDITIONS.** Lessee is advised to satisfy Lessee's self as to neighborhood or area conditions, including: schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any speed wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Lessee.

**MAINTENANCE AND REPAIR; RULES.** Lessee will, at its sole expense, keep, maintain and safeguard the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Lessee shall:

(a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

(b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

(c) Not obstruct or cover the windows or doors;

(d) Not leave windows or doors in an open position during any inclement weather;

(e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

(f) Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Lessor;

(g) Keep all air conditioning filters clean and free from dirt;

(h) Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Lessee shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Lessee;

(i) And Lessee's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

(j) Keep all radios, television sets, stereos, phonographs, etc., turned down to a level of sound that does not annoy or interfere with other residents;

(k) Deposit all trash, garbage, rubbish or refuse in the locations provided therefor and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

(l) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them.

(m) Properly use, operate and safeguard landscaping, and appliance, and all mechanical, electrical, gas and plumbing fixtures, and keep them and the Premises clean, sanitary and well ventilated.

(n) Be responsible for checking and maintaining all smoke detectors.

Lessee shall immediately notify Lessor, in writing, of any problem, malfunction or damage. Lessee shall be charged for all repairs or replacements caused by Lessee, pets, guests or licensees of Lessee, excluding ordinary wear and tear. Lessee shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Lessee shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

Lessee agrees to comply with all Lessor's rules and regulations that are at any time posted on the Premises or delivered to Lessee. Lessee shall not, and shall ensure that guests and licensees of Lessee shall not, disturb, annoy, endanger or interfere with neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illegal drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

**TEMPORARY RELOCATION.** Subject to local law, Lessee agrees, upon demand of Lessor, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Lessee agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables.

**INSPECTION OF PREMISES.** Lessor and Lessor's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any necessary or agreed repairs, decorations, additions or alterations as may be deemed appropriate by Lessor for the preservation of the Premises or the building. Lessor and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, but do not conform to this Agreement or to any restrictions, rules or regulations affecting the Premises.

(1)    **Notice.** Lessor and Lessee agree that 24-hour written notice shall be reasonable and sufficient notice except as follows: 48-hour written notice to conduct an inspection of the Premises prior to the Lessee moving out, unless the Lessee waives the right to such notice. Notice may be given orally to show the Premises to actual or prospective purchasers provided Lessee has been notified in writing within 120 days preceding the oral

notice that the Premises are for sale and that oral notice may be given to show the Premises. No notice is required: (i) to enter in case of an emergency; (ii) if the Lessee is present and consents at the time of entry; or (iii) if the Lessee has abandoned or surrendered the Premises. No written notice is required if Lessor and Lessee orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement.

**SIGNS.** Lessee authorizes Lessor to place FOR SALE/LEASE signs on the Premises.

**SUBORDINATION OF LEASE.** This Agreement and Lessee's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Lessor, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

**LESSEE'S HOLD OVER.** If Lessee remains in possession of the Premises with the consent of Lessor after the natural expiration of this Agreement, a new tenancy from month-to-month shall be created between Lessor and Lessee which shall be subject to all of the terms and conditions hereof except that rent shall then be due and owing at $2,250.00 per month and except that such tenancy shall be terminable upon thirty (30) days written notice served by either party.

**EARLY TERMINATION OF LEASE.**

The lease terminates early if:

(1)     During the initial term of the lease or any extension thereof, the Lessor may terminate the tenancy on the following grounds:

(a) Serious or repeated violations of the terms and conditions of the lease;

(b) Violation of Federal, State, or local law that imposes obligations on the Lessee in connection with the occupancy or use of the contract unit and the premises;

(c) Criminal activity (as provided in Criminal Activity Section described below);

(d) Non-payment of rent or repeated failure to pay rent in a timely manner;

(e) Any misrepresentation or false statement of information on Lessee's application regardless of whether intentional or negligent;

(f) Interfering with the management of the property;

(g) Causing an undue financial burden on the property; or

(h) Other good cause (as provided in Other Good Cause for Terminating Tenancy Section as described below).

(2)     The Lessee terminates the lease with a minimum of 90 calendar days written notice after the initial term; or

(3)     The Lessor and the Lessee mutually agree to terminate the lease, and subject to any agreed upon terms of a subsequent "Release Agreement".

In addition to any obligations established by Rent Section (4) as described above, in the event of termination by Lessee prior to completion of the original term of this Agreement, Lessee shall also be responsible for lost rent, rental commissions, advertising expenses, cleaning and painting costs necessary to ready Premises for re-rental.

**CRIMINAL ACTIVITY.** Any of the following types of criminal activity by the Lessee, any member of the household, a guest or another person under the Lessee's control shall be cause for termination of tenancy.

(1)    Any activity including criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents (including conduct/actions against the Lessor and/or property management staff and/or any agents of Lessor);

(2)    Any activity including criminal activity that threatens the health, safety or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises;

(3)    Any violent criminal activity on or off the premises;

(4)    Any drug-related criminal activity on or off the premises;

(5)    Any other activity which impairs the physical or social environment of the premises;

(6)    Illegal use or possession of a controlled substance;

(7)    Abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents;

(8)    Interference with management of property.

(9)    Criminal activity directly relating to domestic violence, dating violence, sexual assault or stalking engaged in by a member of a Lessee's household or any guest or other person under the Lessee's control shall not be cause for eviction for the Lessee or immediate family member of the Lessee's household who is a victim of domestic violence, dating violence, sexual assault or stalking and as a result Lessee victim could not control or prevent the criminal activity. This exception for victims of domestic violence does not apply to the eviction of a family member who is the perpetrator of the domestic violence or if there is an actual or imminent threat to other residents, the larger community, Lessor/Lessor's agents or persons providing service to the property if the Lessee is not evicted.

The Lessor may terminate the tenancy for criminal activity in accordance with this section if the Lessor determines that the household member/guest has committed the criminal activity, regardless of whether the household member/guest has been arrested or convicted for such activity. In addition, the Lessor may terminate the tenancy if any member of the household is:

(1)    Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees; or

(2)    Violating a condition of probation or parole under Federal or State law.

**OTHER GOOD CAUSE FOR TERMINATION OF TENANCY.**  During the first year of the initial lease term or anytime during the tenancy, other good cause for termination of tenancy must be something the family did or failed to do. Other good cause includes, but is not limited to:

(1)    Disturbance of neighbors;

(2)    Destruction of property;

(3)    Failure to maintain utilities or wasting utilities provided by the Lessor;

(4)    Allowing persons not named on the lease to reside in the unit without Lessor's prior written consent;

(5)    Living or housekeeping habits that cause damage or present safety concerns to the Lessee, other residents or to the unit or premises or that may otherwise result in minimum housing violations; or

(6)    An incident or incidents of actual or threatened domestic violence, dating violence, sexual assault or stalking will not be construed as serious or repeated violations of the lease by the victim or threatened victim of that violence and will not be good cause for terminating a lease held by the victim of such violence.

**SEVERABILITY.** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**BINDING EFFECT.** The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

**DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Lessor or Lessee.

**CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

**NON-WAIVER.** No indulgence, waiver, election or non-election by Lessor under this Agreement shall affect Lessee's duties and liabilities hereunder.

**MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

**TIME OF ESSENCE; ENTIRE CONTRACT.** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.

AGREED:

As to Lessor on

Lessor: Edgar M Thrift 3rd

As to Lessee on

Lessee: Linkus Enterprises, LLC

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | _Edgar_ _Milton_ _THRIFT III_ |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | _District of IDAHO_ |
| Case number (if known) | _17-01668 JTD_ |

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 income as of the following date:

_____
MM / DD / YYYY

## Official Form B 6I

# Schedule I: Your Income

12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
|---|---|

| | | **Debtor 1** | **Debtor 2 or non-filing spouse** |
|---|---|---|---|
| 1. Fill in your employment information. | | | |
| If you have more than one job, attach a separate page with information about additional employers. | Employment status | ☑ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| Include part-time, seasonal, or self-employed work. | Occupation | _Property Management / MAINTENANCE_ | |
| Occupation may include student or homemaker, if it applies. | Employer's name | _Helping Hands_ | |
| | Employer's address | _1413 cottonwood ct_ | |
| | | Number   Street | Number   Street |
| | | _Boise    ID   83702_ | |
| | | City      State   ZIP Code | City      State   ZIP Code |
| | How long employed there? | _4_ | |

| Part 2: | Give Details About Monthly Income |
|---|---|

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ _1604 44_ | $ _____ |
| 3. | Estimate and list monthly overtime pay. | 3. | + $ _0_ | + $ _____ |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ _1604 44_ | $ _____ |

Official Form B 6I                    Schedule I: Your Income                    page 1

Debtor 1    _Edgar_    _Milton_    _Thrower_

First Name    Middle Name    Last Name

Case number (if known)   17-01668-JDP

|  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|
| Copy line 4 here ......................................................→ 4. | $ 1604 <sup>44</sup> | $ |

**5. List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 0 | $ |
| 5b. Mandatory contributions for retirement plans | 5b. | $ 0 | $ |
| 5c. Voluntary contributions for retirement plans | 5c. | $ 0 | $ |
| 5d. Required repayments of retirement fund loans | 5d. | $ 0 | $ |
| 5e. Insurance | 5e. | $ 0 | $ |
| 5f. Domestic support obligations | 5f. | $ 0 | $ |
| 5g. Union dues | 5g. | $ 0 | $ |
| 5h. Other deductions. Specify: _____ | 5h. + $ 0 | + $ |

| 6. Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g +5h. | 6. | $ 0 | $ |
|---|---|---|---|
| 7. Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 1604 <sup>44</sup> | $ |

**8. List all other income regularly received:**

8a. Net income from rental property and from operating a business, profession, or farm

Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.     8a.    $ 1394 <sup>25</sup>    $

8b. Interest and dividends    8b.    $ 0    $

8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive

Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.    $ 0    $

8d. Unemployment compensation    8d.    $ 0    $

8e. Social Security    8e.    $ 0    $

8f. Other government assistance that you regularly receive

Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.

Specify: _____    8f.    $ 0    $

8g. Pension or retirement income    8g.    $ 0    $

8h. Other monthly income. Specify: _____    8h. + $ 0    + $

| 9. Add all other income. Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ 1394 <sup>25</sup> | $ |
|---|---|---|---|
| 10. Calculate monthly income. Add line 7 + line 9. | 10. | $ 2999 <sup>22</sup> | + | $ | = | $ |

Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

**11. State all other regular contributions to the expenses that you list in Schedule J.**

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.

Specify: _____    11. + $ 0

**12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.**

Write that amount on the Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data, if it applies.    12. | $ 2999 <sup>22</sup>

Combined monthly income

**13. Do you expect an increase or decrease within the year after you file this form?**

☑ No.

☐ Yes. Explain: _____

Fill in this information to identify your case:

Debtor 1    *Edgar    Millen    THRIFT III*
           First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    *District of Idaho*

Case number    *17 - 01668 - JDP*
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13
   expenses as of the following date:
   _____
   MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2
   maintains a separate household

## Official Form B 6J

# Schedule J: Your Expenses

12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1. Is this a joint case?

   ☑ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

      ☐ No
      ☐ Yes. Debtor 2 must file a separate Schedule J.

2. Do you have dependents?

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents' names.

   ☐ No
   ☑ Yes. Fill out this information for each dependent..........................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| *Daughter* | *9* | ☑ No ☐ Yes |
| _____ | ____ | ☐ No ☐ Yes |
| _____ | ____ | ☐ No ☐ Yes |
| _____ | ____ | ☐ No ☐ Yes |
| _____ | ____ | ☐ No ☐ Yes |

3. Do your expenses include expenses of people other than yourself and your dependents?

   ☑ No
   ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form B 6I.)

Your expenses

4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.

   4.    $ *1613²²*

   If not included in line 4:

   4a.    Real estate taxes                                          4a.    $ *120*
   4b.    Property, homeowner's, or renter's insurance              4b.    $ *100*
   4c.    Home maintenance, repair, and upkeep expenses             4c.    $ *5*
   4d.    Homeowner's association or condominium dues               4d.    $ *0*

Debtor 1  Elgon Milton Thrift II
First Name  Middle Name  Last Name

Case number (if known)  17 - 01668 - JDP

**Your expenses**

| | | |
|---|---|---|
| 5 Additional mortgage payments for your residence, such as home equity loans | 5. | $1487.00 |
| **6. Utilities:** | | |
| 6a. Electricity, heat, natural gas | 6a. | $350 (200+150) |
| 6b. Water, sewer, garbage collection | 6b. | $220 (120+100) |
| 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $(110+50)160 |
| 6d. Other. Specify: _____ | 6d. | $ |
| 7. Food and housekeeping supplies | 7. | $500 |
| 8. Childcare and children's education costs | 8. | $65 |
| 9. Clothing, laundry, and dry cleaning | 9. | $50 |
| 10. Personal care products and services | 10. | $70 |
| 11. Medical and dental expenses | 11. | $50 |
| 12. Transportation. Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $50 |
| 13. Entertainment, clubs, recreation, newspapers, magazines, and books | 13. | $25 |
| 14. Charitable contributions and religious donations | 14. | $0 |
| **15. Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| 15a. Life insurance | 15a. | $0 |
| 15b. Health insurance | 15b. | $40 |
| 15c. Vehicle insurance | 15c. | $110 |
| 15d. Other insurance. Specify: _____ | 15d. | $ |
| 16. Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | $ _____ |
| **17. Installment or lease payments:** | | |
| 17a. Car payments for Vehicle 1 | 17a. | $0 |
| 17b. Car payments for Vehicle 2 | 17b. | $0 |
| 17c. Other. Specify: _____ | 17c. | $0 |
| 17d. Other. Specify: _____ | 17d. | $0 |
| 18. Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form B 6I). | 18. | $375 |
| 19. Other payments you make to support others who do not live with you. Specify: _____ | 19. | $0 |
| **20. Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | |
| 20a. Mortgages on other property | 20a. | $0 |
| 20b. Real estate taxes — Rental Property | 20b. | $555 |
| 20c. Property, homeowner's, or renter's insurance | 20c. | $350 |
| 20d. Maintenance, repair, and upkeep expenses | 20d. | $100 |
| 20e. Homeowner's association or condominium dues | 20e. | $0 |

A Lewd - 115
B Lurkey 120
C N 20th 320

Debtor 1    _Elgar Miton THRIFY II_    Case number (if known) _17-01668-JDP_
First Name    Middle Name    Last Name

21.  **Other.** Specify: _____    21.  +$ _____

22.  **Your monthly expenses.** Add lines 4 through 21.
     The result is your monthly expenses.    22.  $ _5425 71_

23.  **Calculate your monthly net income.**

     23a.  Copy line 12 (*your combined monthly income*) from *Schedule I.*    23a.  $ _2999 23_

     23b.  Copy your monthly expenses from line 22 above.    23b.  -$ _5425 71_

     23c.  Subtract your monthly expenses from your monthly income.
           The result is your *monthly net income.*    23c.  $ _-2426 48_

24.  **Do you expect an increase or decrease in your expenses within the year after you file this form?**

     For example, do you expect to finish paying for your car loan within the year or do you expect your
     mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

     ☑ No.
     ☐ Yes.    Explain here:

Reset    Save As...    Print

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | Edgar Millon Thrift III |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) First Name    Middle Name    Last Name | |
| United States Bankruptcy Court for the: _____ District of _____ | |
| Case number (If known) | 17 - 01668 - JDP |

☐ Check if this is an
amended filing

## Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

☑ No

☐ Yes. Name of person _____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

✗ _Edgar M. Thrift III_  ✗ _____
Signature of Debtor 1              Signature of Debtor 2

Date 4/26/18              Date _____
MM / DD / YYYY              MM / DD / YYYY